UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| AMANDA C. FOSTER | CIVIL ACTION |
| | NO. 2:16-CV-01270 |
| VERSUS | |
| | |
| PRINCIPAL LIFE INSURANCE COMPANY, | |
| SULLIVAN STOLIER KNIGHT LC, AND | |
| THE SULLIVAN STOLIER KNIGHT LC | |
| EMPLOYEE BENEFIT PLAN | ERISA CLAIM |

## COMPLAINT

The Complaint of **Amada C. Foster** respectfully alleges:

1. This is a claim for ERISA disability benefits as well as other employee benefits that Plaintiff would be entitled to had Principal Life Insurance Company not terminated Plaintiff's benefits.

2. The Court has jurisdiction and venue under 29 U.S.C. § 1001, et seq.

3. Plaintiff, **Amanda Foster**, of lawful age and a resident of New Orleans, Louisiana, is a plan participant and beneficiary of an ERISA plan created by her employer Sullivan Stolier Knight LC, formerly known as Sullivan Stolier Kovata Knight LC, and an insured participant of a group disability policy issued by the Principal Life Insurance Company.

4. Defendant, **Principal Life Insurance Company** ("Principal") is a foreign corporation authorized and doing business in Louisiana.

5. Defendant, **Sullivan Stolier Knight LC** ("Sullivan") is a Louisiana limited liability company authorized and doing business in Louisiana. Sullivan may have acted as the plan administrator for the disability policy at issue in this matter as well as the other employee

1

benefits that Plaintiff is entitled to under terms of the Sullivan employee welfare benefit plan.

6. Defendant, **Sullivan Stolier Knight LC Employee Benefit Plan**, is a plan sponsored and administered by defendant, Sullivan Stolier Knight LC and which provides retirement, healthcare, disability, life, dental, vision, and other benefits that are affected by Principal termination of Plaintiff's disability claim.

7. Principal issued a group policy insuring the employees of Sullivan Stolier Kovata Knight LC.  Plaintiff is a beneficiary and insured under the policy.

8. ERISA mandates that all plan administrators discharge their duties in the interest of plan participants and beneficiaries.  29 U.S.C. Sec. 1104(a)(1).

9. Plaintiff filed a claim for disability benefits with the Plan because her medical condition precluded her from continuing to perform the duties of her occupation as a health care attorney on a fulltime basis.

10. Plaintiff is disabled under the terms of the disability policy issued by Principal.

11. Principal approved her claim for benefits and paid her claim beginning September 4, 2013. Principal terminated her benefits effective December 9, 2014 claiming that Plaintiff no longer met the policy's definition of disability.  Principal also denied her waiver of premium benefit that would continue her life insurance premiums while disabled.

12. Plaintiff appealed the denial of her claims explaining to Principal that her illness of chronic intractable refractory migraines precludes her from performing one or more of the substantial and material duties of her own occupation as a practicing health care attorney and which could not be modified or omitted.  Plaintiff also submitted reliable medical evidence, including her treating physicians' and high level medical experts' opinions

demonstrating that she is disabled due to her medical conditions and therefore unable to be gainfully employed in her own occupation.

13. The substantial and material duties of her own occupation as a practicing health care attorney include:

> A logical and analytical mind is required to practice any type of law. Health care law also requires a strong affinity for policy and the legislative process in addition to general curiosity about the inner working of the American health care system.
>
> As a healthcare specialist she was required to work on cases and policy relating to access to care, insurance coverage, difficult ethical choices (particularly at the beginning and end of life), providers of care (and how these providers are organized and paid), the safety of our drugs and food supply, disease prevention and treatment, and many other fascinating topics. In part because of the breadth of the field, health law also cuts across and involves doctrine and practice from a wide array of areas, including contract law, tax law, corporations and nonprofit organization, insurance and pension law, employment and labor law, public benefits law, torts, ethics, criminal law, administrative law, constitutional law, and statutory drafting and interpretation—even First Amendment religious liberty and freedom of speech concepts can be implicated in the field of health law. And health law is practiced in a dizzying range of settings: in federal, state and local government; in legal services organizations; in advocacy nonprofits; and in private public interest law firms, to name a few.
>
> The following is the identification of Ms. Foster's pre-disability substantial and material duties of her own occupation as a healthcare attorney because the firm and the legal profession required, at a minimum, Ms. Foster to meet the following requirements at all times for a minimum of 40 hours per week:
>
> 1. The cognitive capacity to learn, to recall what has been learned, to reason and to analyze;
> 2. The ability to communicate clearly with clients, attorneys, courts, and others;
> 3. The ability to exercise good judgment in conducting one's professional business;
> 4. The ability to conduct oneself with a high degree of honesty, integrity, and trustworthiness in all professional relationships and with respect to all legal obligations;
> 5. The ability to conduct oneself with respect for and in accordance with the law and the Rules of Professional Conduct;

    6.     The ability to avoid acts that exhibit disregard for the health, safety and welfare of others;
    7.     The ability to conduct oneself diligently and reliably in fulfilling all obligations to clients, attorneys, courts, and others;
    8.     The ability to use honesty and good judgment in financial dealings on behalf of oneself, clients, and others;
    9.     The ability to comply with deadlines and time constraints; and
    10.     The ability to conduct oneself professionally.

Ms. Foster's own occupation mandated that she be capable and exercise a high-level executive function, including her abilities to process and to learn new and complex information. These abilities are integral to all of the core functions an attorney must perform to integrate, to synthesize, and ultimately to put to use vast amounts of detailed information in order to represent her clients adequately and to advance her clients' interests in negotiations or before a court. Moreover, an attorney is not permitted to satisfy only some of the standards required by the profession. She was required to have the abilities to process and to learn new and complex information. These abilities are applied to all of the core functions that an attorney must perform to integrate, to synthesize, and ultimately to put to use vast amounts of detailed information in order to represent her clients adequately and to advance her clients' interest in negotiations or before court. An attorney is not permitted to satisfy only some of the standards required by the profession. She must perform all of the following duties all of the time:

    1.     The ability to reason, recall complex factual information, and integrate that information with complex legal theories;
    2.     The ability to communicate with clients, lawyers, courts and others with a high degree of organization and clarity;
    3.     The ability to use good judgment on behalf of clients and in conducting one's professional business;
    4.     The ability to conduct oneself with respect for and in accordance with the law;
    5.     The ability to comply with the requirements of the Rules of Professional Conduct, applicable state, local and federal laws, regulations, statutes and any applicable order of a court or tribunal;
    6.     The ability to act diligently and reliably in fulfilling one's obligations to clients, lawyers, courts and others; and
    7.     The ability to comply with deadlines and time constraints.

14.     Plaintiff's illness of chronic intractable refractory migraines and the required use of prescription drugs preclude her from performing the material duties of her job.

15. Principal chose to disregard plaintiff's credible and substantial proof of claim evidence.

16. Principal issued a letter dated December 21, 2015 deny the appeal and upholding its decision to terminate benefits.  Principal's conduct in this regard is procedurally unreasonable, an abuse of discretion, and a breach of fiduciary duty.

17. Principal based its decision, in part, on the results of an Independent Neuropsychological Evaluation (INE) completed on December 2, 2015.  The policy grants Principal with the authority to order plaintiff to participate in an INE and it warns that "failure to attend an evaluation or to cooperate with the evaluator may also be cause for suspension or denial of member benefits".  The denial letter notes that Plaintiff experienced a headache during the test, took medication and was able to complete the INE as justification that she could work as an attorney and consume narcotics at the same time.  It also pointed to objective test data showing normal findings.

18. The INE was performed by Michael D. Chafetz, Ph.D., board certified in clinical neuropsychology.  He is not a medical doctor, nor does he have any expertise in migraines or headaches.  Yet, he opined and Principal wrongly found that Plaintiff does not have chronic intractable refractory migraines, rather she uses the excuse of headaches to "stop doing things that cause her discomfort".  Principal did not require nor obtain Plaintiff's examination by an independent physician consultant.  Thus, Principal arbitrarily refused to credit Plaintiff's reliable evidence, including that of medical doctors and her subjective complaints to deny benefits.

19. The policy does not require objective medical evidence to qualify for benefits.  Nor, does it exclude benefits based upon subjective complaints.

20. On January 27, 2016, Plaintiff's counsel provided Principal with the declaration of Phyllis Shnaider and additional Ochsner Health System records as additional proof of claim evidence.

21. Upon receiving this additional letter, Principal refused to reconsider the claim. Principal's failure to reconsider its denial of her appeal based on this new information is an additional abuse of discretion.

22. Principal's denials are based on insubstantial evidence and are arbitrary and an abuse of discretion.

23. Plaintiff has exhausted her administrative remedies and now timely files suit to reverse Principal's termination and denial of benefits.

24. Principal has abused its discretion as plan administrator by denying Plaintiff's claim for disability benefits in bad faith.

25. Principal has abused its discretion by failing to consider the disabling, synergistic effect of all of Plaintiff's medical conditions.

26. Principal abused its discretion and failed to provide a full and fair review by relying on the report of a non-medical doctor consultant in its final denial letter and not allowing Plaintiff a chance to challenge that opinion.

27. Principal denial of her claim is procedurally unreasonable.

28. Principal administered Plaintiff's claim with an inherent and structural conflict of interest, as Principal is liable to pay benefits from its own assets to Plaintiff, and each payment depletes Principal assets.

29. Principal has failed to give the policy and Plan a uniform construction and interpretation.

30. As a routine business practice, Principal uses the appeals process to support initial benefit denials rather than to review impartially whether it should reverse appealed denials.

31. Principal administration of this claim corrupts any reasonable meaning of "full and fair review" that ERISA requires.

32. Principal's conduct in this matter constitutes a breach of fiduciary duty.

33. Plaintiff has been denied the benefits due Plaintiff under the Plan, has suffered, and is continuing to suffer economic loss as a result.

34. Plaintiff is entitled to an award of interest on all money that Defendant should have paid to Plaintiff.

35. Defendant's denials has required Plaintiff to hire attorneys to represent her to recover benefits due Plaintiff under the Plan.

36. Sullivan's employee benefit plan provides that employees who are receiving long term disability benefits under Sullivan's long term disability plan and Social Security disability benefits will receive additional Benefit Service credits during the period of disability. Because Principal wrongfully terminated Plaintiff's disability benefits, Plaintiff wrongfully lost these additional benefits that she is entitled to under Sullivan's employee benefit plan.

37. Defendant's denial of Plaintiff's long term disability claim caused Plaintiff to lose additional, continuing employee benefits under the Sullivan's plan, such as pension contribution accrual, health insurance, dental insurance, and other benefits.

38. Plaintiff is entitled to all of the benefits under Sullivan's employee welfare benefit plan that she is entitled to receive while receiving long term disability benefits.

**WHEREFORE**, Plaintiff prays for judgment against each Defendant as follows:

a.	For all benefits due Plaintiff in the past and future under the Plan, plus pre- and post-judgment interest;

b.	For all reasonable attorney fees;

c.	For costs of suit; and,

d.	For all other relief as the facts and law may provide.

                Respectfully submitted,

                /s/ *James F. Willeford*
                James F. Willeford (LA 13485)
                Reagan L. Toledano (LA 29687)
                **WILLEFORD & TOLEDANO**
                201 St. Charles Avenue, Suite 4208
                New Orleans, Louisiana 70170
                (504) 582-1286; (f) (313)692-5927
                jimwilleford@willlefordlaw.com