| | |
|---|---|
| **AMANDA C. FOSTER** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 16-1270** |
| **PRINCIPAL LIFE INSURANCE COMPANY, et al.** | **SECTION: "G"(2)** |

## ORDER AND REASONS

Before the Court is Plaintiff Amanda Foster's ("Foster") "Motion for Reconsideration/New Trial/and/or to Amend or Alter Judgment Under Rule 59."[1] This is an action for review of the denial of long-term disability benefits and life insurance waiver of premium benefits under an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA"). The parties, Foster and Defendant Principal Life Insurance Company ("Principal"), filed cross motions for judgment on the administrative record.[2] On November 21, 2017, the Court entered judgment in favor of Principal.[3] Foster seeks reconsideration under Rule 59(e). Having considered the motion, the memoranda in support and opposition, the record, and the applicable law, the Court will deny Foster's motion.

## I.  Background

On July 8, 2013, Foster filed a claim for long-term disability ("LTD") benefits  pursuant to a Group Policy issued by Principal, alleging that she was "unable to practice law due to pain of

---

[1] Rec. Doc. 39.

[2] Rec. Docs. 25, 26.

[3] Rec. Doc. 30.

headaches" as of March 8, 2013.[4] On February 3, 2016, after multiple administrative hearings, Principal denied her claim and informed Foster that all administrative appeal options had been exhausted.[5]

On February 12, 2016, Foster filed a complaint in this Court, alleging that she was wrongfully denied ERISA disability benefits.[6] On February 13, 2017, Foster and Principal filed cross motions for judgment on the administrative record.[7] On July 13, 2017, and September 19, 2017, Foster underwent neurostimulator implant procedures.[8] On November 21, 2017, this Court granted Principal's motion for judgment as a matter of law and entered judgment in favor of Principal.[9]

On December 19, 2017, Foster filed the instant motion for reconsideration asserting that the Court should consider the newly discovered evidence.[10] On January 9, 2018, Principal filed a response in opposition to Foster's motion.[11] On January 25, 2018, with leave of Court, Foster filed a reply brief.[12] Oral argument regarding the motion for reconsideration was held on January 24, 2018.[13] At oral argument, the Court granted the parties leave to file supplemental briefing

---

[4] AR 5634.

[5] Rec. Doc. 26-1 at 15.

[6] Rec. Doc. 1.

[7] Rec. Docs. 25, 26.

[8] Rec. Doc. 39-2 at 11, 13.

[9] Rec. Docs. 37, 38.

[10] Rec. Doc. 39.

[11] Rec. Doc. 45.

[12] Rec. Docs. 51, 52.

[13] Rec. Doc. 50.

regarding Plaintiff's argument that the Court's judgment contains manifest errors of law and fact.[14] On February 1, 2018, Foster filed a supplemental memorandum to the motion for reconsideration.[15] On February 22, 2018, Principal filed a reply memorandum in response to Foster's supplemental memorandum.[16]

## II. Parties' Arguments

### A. *Foster's Arguments in Support of the Motion for Reconsideration; Alleged New Evidence*

Foster asserts that "the Court should consider the attached newly discovered evidence that was not available when this matter was tried."[17] Foster asserts that the Court's November 21, 2017 decision "was made in light of the medical records, opinions from various treating doctors, an IME doctor, and doctors hired by Principal."[18] Therefore, Foster argues that "evidence bearing on the severity of her condition is critical in helping the Court reach the correct decision and to avoid manifest injustice."[19]

Specifically, Foster asserts that the Court should consider updated medical records demonstrating that she recently underwent a neurostimulator implant to "help control her headaches."[20] According to Foster, the device was inserted "into her left breast" and "contains four leads that run over her shoulder, up her cervical, and into the base of her skull."[21] Foster avers that

---

[14] *Id.*

[15] Rec. Doc. 54.

[16] Rec. Doc. 60.

[17] Rec. Doc. 39-1 at 1.

[18] *Id.* at 3.

[19] *Id.*

[20] *Id.*

[21] *Id.*

no one would undergo this invasive procedure "unless they were actually suffering from debilitating headaches."[22] Thus, Foster concludes that "[t]he attached newly discovered evidence should be considered in order to prevent manifest injustice."[23]

**B.    *Principal's Arguments in Opposition to the Motion for Reconsideration; Evidence Available When Decision was Rendered***

Principal first asserts that reconsideration is not warranted because Foster's motion does not present newly discovered evidence, as "the medical treatment underlying Foster's motion was rendered and received in July and September 2017."[24] Principal argues that "[a]s the Court's judgment was not entered until November 21, 2017, Foster had ample time to attempt to supplement the record and present this additional information to the Court prior to the judgment on the parties' cross-motions."[25] Moreover, Principal asserts that continued medical treatment is "likely inherent" in disability cases.[26] Principal further argues, "If a plaintiff were able to question a court's determination based on such continued treatment evidence, no court decision in a disability case would ever be final but always subject to revisions based on subsequent treatment records."[27]

Alternatively, even if the medical records were newly discovered evidence, Principal contends that reconsideration is not warranted.[28] Principal notes that the Court's review of the administrative decision is subject to an arbitrary and capricious standard of review and limited to

---

[22] *Id.*

[23] *Id.*

[24] Rec. Doc. 45 at 3.

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] *Id.* at 4.

consideration of the record before the claims administrator.[29] Principal further states that there are only two exceptions to this rule, evidence interpreting the plan or evidence explaining medical terms and procedures, and neither of the exceptions apply here.[30]

## C.  *Foster's Reply Memorandum in Further Support of the Motion for Reconsideration*

In the reply brief, Foster asserts that the medical records were not available when the cross motions for judgment on the pleadings were submitted to the Court on March 15, 2017.[31] Moreover, Foster contends that the Court may consider evidence that was not part of the administrative record under special circumstances.[32] In support of this assertion, Foster cites a Tenth Circuit case, *Hall v. UNUM Life Insurance Company of America*, which she asserts held that the court could consider evidence of additional surgeries that were outside the administrative record.[33] Foster notes that the benefit denial in *Hall* was considered under a *de novo* standard of review, whereas this case is subject to an arbitrary and capricious standard of review.[34] Nevertheless, Foster asserts that *Hall* provides guidance as to when evidence outside the administrative record should be considered.[35]

Moreover, Foster contends that the evidence is admissible because it "helps the Court understand the medical terminology associated with migraine disorder as well as the practice

---

[29] *Id.* (citing *Truitt v. Unum Life Ins. Co. of Am.*, 729 F.3d 497, 508 (5th Cir. 2017)).

[30] *Id.* (citing *Estate of Bratton v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 215 F.3d 516, 521 (5th Cir. 2000)).

[31] Rec. Doc. 52 at 1.

[32] *Id.* at 1–2.

[33] *Id.* at 2 (citing 300 F.3d 1197, 1206 (10th Cir. 2002)).

[34] *Id.*

[35] *Id.*

related to the diagnosis and treatment of migraine disorder."[36] Foster asserts that "[t]he Court seems to have been influenced by opinions of two of Principal's reviewing doctors who opined that Foster was suffering from anxiety and depression, and/or her headache disorder was opioid induced or psychosomatic, rather than a headache disorder."[37] According to Foster, "[t]he proffered evidence helps the Court understand the medical terminology and practice related to treatment of Foster's headache disorder in that it demonstrates that her headaches are indeed real and severe, as no one elects to have wires surgically implanted inside their body unless they are suffering from debilitating headaches."[38] Alternatively, Foster notes that the Court could remand this matter to Principal for consideration of its previous decision in light of this evidence.[39] Finally, Foster asserts that she "is prepared to demonstrate in her appeal to the Fifth Circuit why the Court's decision contains both manifest factual and legal errors."[40]

### D. *Foster's Supplemental Memorandum in Support of Motion for Reconsideration*

In the supplemental briefing, Foster asserts that the Court's November 21, 2017 judgment in favor of Principal contains manifest errors of law and fact.[41] First, Foster argues that the Court erred in finding both that Foster failed to provide the specific duties of her job to Principal and that Principal considered the actual duties of her job when analyzing her claim.[42] Foster alleges that the administrative record contains evidence of the specific job requirements of a healthcare

---

[36] *Id.* at 3 (citing *Estate of Bratton v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 215 F.3d 516, 521 (5th Cir. 2000)).

[37] *Id.* at 3 (citing Rec. Doc. 37 at 54–55).

[38] *Id.*

[39] *Id.* at 4.

[40] *Id.*

[41] Rec. Doc. 54 at 1.

[42] *Id.* at 2.

attorney.[43] Specifically, Foster contends that her employer provided a job description and Foster herself listed her job duties on her disability application.[44]

Moreover, Foster contends that contrary to the Court's finding, her treating physicians and two of Principal's physicians, determined that Foster's migraine disorder precluded her from performing the material duties of her job, including "meeting deadlines, handling stress, unpredictability of absences, prolonged computer use, prolonged light exposure, intellectual challenges of handling complex situations, etc."[45] By contrast, Foster avers that neither Principal nor its reviewing doctors "opined on [Foster's] ability to perform the actual job duties of a healthcare attorney."[46] Foster argues that Principal simply asked its reviewing doctors if they believed Foster could perform a sedentary job on a fulltime basis, which she asserts was insufficient under an "own occupation" policy.[47] Furthermore, Foster avers that stress, a trigger for her headaches, was never addressed by Principal or the reviewing doctors.[48] Similarly, Foster contends that Principle abused its discretion by failing to consider her medical condition in light of the intellectually challenging job demands.[49] Therefore, Foster believes that Principal's failure to analyze her medical condition in light of the specific job demands amounted to an abuse of discretion.[50]

---

[43] *Id.* at 2–3.

[44] *Id.* at 2–3 (citing AR 1183, 545, 1239–45).

[45] *Id.* at 3–5.

[46] *Id.* at 6.

[47] *Id.*

[48] *Id.* at 7–8.

[49] *Id.* at 8.

[50] *Id.* at 8–10.

Second, Foster argues that the Court erred in finding that there was no objective or clinical evidence of functionally impairing headaches.[51] Foster contends that other courts have found that insurers abuse their discretion when denying a disability claim based on a migraine disorder for lack of objective evidence because a migraine disorder does not present results on neurological testing.[52] Foster asserts that her treating physicians, her social worker, the IME doctor, and at least two of Principal's reviewing doctors agreed that there was specific clinical evidence supporting that she suffers from functionally impairing headaches.[53] Foster contends that Drs. Hoenig and Miller were the only neurologists to opine that there was a lack of clinical evidence supporting debilitating migraine headaches.[54] According to Foster, these opinions were entirely inconsistent with her medical records, and amount to "blatant cherry-picking."[55] Therefore, Foster asserts that "the Court erred in refusing to find that Plaintiff's headache disorder, which is based on subjective symptoms, was not proven to be functionally impairing when the basis for this notion is that her neurological testing was normal."[56]

Third, Foster argues that the Court erred in finding that Foster suffers from mental illness as opposed to a headache disorder.[57] Foster posits that the Court's order erroneously adopted

---

[51] *Id.* at 10.

[52] *Id.* at 11–12 (**citing** *Hegarty v. AT&T Umbrella Benefit Plan No. 1*, 109 F. Supp. 3d 1250, 1258 (N.D. Cal. 2015); *Boyd v. Liberty Life Assurance Co. of Boston*, 362 F. Supp. 2d 660, 669 (W.D.N.C. 2005); *Fisher v. Aetna Life Ins. Co.*, 890 F. Supp. 2d 473, 483 (D. Del. 2012); *Creel v. Wachovia Corp.*, 2009 WL 179584, at *8 (11th Cir. 2009)).

[53] *Id.* at 12.

[54] *Id.* at 15.

[55] *Id.*

[56] *Id.* at 16.

[57] *Id.*

Principal's argument that Foster's headaches are psychosomatic and/or result from opioid abuse.[58] Furthermore, Foster argues that in rendering its decision, the Court erred in accepting the opinions of Principal's reviewing doctors that Foster's headaches are either psychosomatic and/or opioid induced, which she contends ignored the evidence that she has experienced headaches since childhood.[59] Therefore, Foster claims that Principal failed to analyze all pertinent evidence in its denial of her claims and only focused upon the evidence supporting its determination.[60]

Fourth, Foster argues that the Court erred in finding the administrator did not abuse its discretion by denying life insurance waiver of premium ("LWOP") benefits, as Principal failed to provide evidence of alternative occupations that it believes Foster should be able to perform.[61] Foster avers that Principal failed to perform a vocational assessment to identify any alternative occupation that Foster could perform based upon her limitations.[62] Furthermore, Foster argues that the Court erred in finding that she lost her eligibility for the LWOP benefits upon her failed attempt to reduce her hours to continue working.[63] Foster argues that by denying her claim the Court is "unfairly penalizing" her for trying to continue working.[64] In support of her argument, Foster avers that under 29 U.S.C § 1104, "Principal cannot penalize a claimant for trying to continue to work

---

[58] *Id*. at 17.

[59] *Id*.

[60] *Id*. Alternatively, Foster also contends that the issue of whether the 24-month limitation applied—an issue that the Court did not reach—is not properly before the Court because Principal did not terminate benefits due to that limitation. *Id*. at 19–20.

[61] Rec. Doc. 54 at 20.

[62] *Id*. at 21.

[63] *Id*.

[64] *Id*. at 22.

as much as possible when she should have taken fulltime disability leave instead."[65] Accordingly, for these reasons, Foster asserts that the Court should enter judgment in her favor as originally requested in her motion for judgment on the pleadings.[66]

### E.    Principal's Response to Foster's Supplemental Memorandum in Support of the Motion for Reconsideration

In the supplemental memorandum, Principal avers that Foster's supplemental brief is "devoid . . . of an explanation how her disagreement with the Court's ruling amounts to a manifest error of law or fact by the Court and how her regurgitation of arguments previously raised constitutes a proper motion for reconsideration.[67] Principal asserts that all of Foster's arguments included in the supplemental brief were addressed by the Court in its prior opinion, and Foster's mere disagreement with the Court's decision is not a proper basis for reconsideration.[68]

First, Principal notes that Foster raised the argument that her medical condition needed to be analyzed in relation to the actual duties of her occupation was addressed in the Court's prior opinion.[69] Principal posits that the Court acknowledged the argument and explained that, although Foster had described her "specific job requirements," she had failed to provide evidence linking her inability to work directly to those requirements.[70] Furthermore, Principal contests Foster's assertion that Principal evaluated Foster's occupation as sedentary rather than considering the non-exertional aspects of her occupation, noting that the denial letter discussed Foster's ability to write,

---

[65] Id.

[66] Id.

[67] Rec. Doc. 60 at 1.

[68] Id. at 2–3.

[69] Id. at 4.

[70] Id.

focus, and concentrate.[71] Principal avers that its "determination is supported by substantial evidence, including a detailed evaluation of the non-exertional aspects of [Foster's] occupation."[72]

Second, Principal argues that the Court applied the proper objective evidence standard and that Foster misrepresents the distinction made by the Court between objective evidence of Foster's actual headaches and objective evidence of the loss of function Foster claimed to experience as a result of the headaches.[73] Principal claims that Foster has only pointed to evidence of her own self-reports to her physicians and her slightly diminished IQ, neither of which objectively evidence an inability to work.[74] Therefore, Principal argues that the Court did not err in finding that Principal's decision was supported by substantial evidence.[75]

Third, Principal argues that Foster mischaracterizes the Court's discussion of Principal's argument in connection with the mental health limitation provision in the group policy.[76] Principal avers that in examining Principal's argument on this point, the Court held that Principal did not abuse its discretion in concluding that Foster is not entitled to any benefits under the Group Policy and did not rule on the nature of Foster's condition.[77]

---

[71] *Id*. at 7.

[72] *Id*.

[73] *Id*. at 9.

[74] *Id.* at 11.

[75] *Id*.

[76] *Id*.

[77] *Id*. at 12–13. Further, Principal argues that Foster's attempt to rehash arguments pertaining to the issue of whether the 24-month limitation provision was properly before the Court should be rejected because the Court's decision was not based on that argument. *Id.* at 13–14.

Fourth, Principal argues that Foster fails to point to anything that would support that the Court made a manifest error of law or fact pertaining to her claim regarding her LCDD claim.[78] Principal argues that its "reasonable decision regarding [Foster's] lack of entitlement to benefits under the stricter Own Occupation definition of disability under the Group Disability Policy disqualifies Plaintiff from LCDD benefits under the less strict any occupation definition of disability in the Group Life Policy."[79] Principal avers that Foster's claim that Principal should have conducted a vocational assessment is a "red herring" because no vocational assessment was necessary since Principal had already determined that Foster had the functional capacity to perform the duties of her own occupation.[80]

Further, as to Foster's argument regarding her loss of "Member" status under the Group Life Policy due to her reduction of hours, Principal argues that under the terms of the Group Life Policy Foster clearly lost her coverage when she reduced her hours below full-time work.[81] Finally, with respect to Foster's argument that Principal cannot penalize Foster for attempting to continue working under 29 U.S.C. § 1104 (ERISA's fiduciary duties provision), Principal argues that as a fiduciary it must consider all participants in discharging its duties.[82] Thus, Principal avers that allowing benefits to a claimant who under the clear language of the policy is not entitled to them would indeed be a breach of the fiduciary's duties to the remaining participants.[83] As a result,

---

[78] *Id.* at 14.

[79] *Id.*

[80] *Id.* at 15.

[81] *Id.* at 16.

[82] *Id.*

[83] *Id.* at 16–17.

Principal concludes, Foster's motion failed to show any manifest errors in law or fact in the Court's opinion and should be denied.[84]

### III. Legal Standard

Federal Rule of Civil Procedure 59(e) allows courts to alter or amend its judgments after entry. The Court has "considerable discretion" in deciding whether to grant a motion for reconsideration, but must "strike the proper balance between two competing imperatives: (1) finality and (2) the need to render just decisions on the basis of all facts."[85] This Court's discretion is further bound by the Fifth Circuit's instruction that reconsideration is an "extraordinary remedy that should be used sparingly,"[86] with relief being warranted only when the basis for relief is "clearly establish[ed]."[87] Courts in the Eastern District of Louisiana have generally considered four factors in deciding motions for reconsideration under the Rule 59(e) standard:

(1) the motion is necessary to correct a manifest error of law or fact on which the judgment is based;

(2) the movant presents newly discovered or previously unavailable evidence;

(3) the motion is necessary in order to prevent manifest injustice; or

(4) the motion is justified by an intervening change in controlling law.[88]

---

[84] *Id.* at 17.

[85] *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d 350, 355 (5th Cir. 1993).

[86] *Templet v. Hydrochem, Inc.*, 367 F.3d 473, 479 (5th Cir. 2004).

[87] *Schiller v. Physicians Res. Grp., Inc.*, 342 F.3d 563, 567 (5th Cir. 2003); *Castrillo v. Am. Home Mortgage Servicing Inc.*, No. 09-4369 R, 2010 WL 1424398, at *3 (E.D. La. Apr. 5, 2010) (Vance, J.).

[88] *See, e.g.*, *Castrillo v. Am. Home Mortgage Servicing Inc.*, No. 09-4369 R, 2010 WL 1424398, at *4 (E.D. La. Apr. 5, 2010) (Vance, J.) (citations omitted).

A motion for reconsideration, "'[is] not the proper vehicle for rehashing evidence, legal theories, or arguments . . . .'"[89] Instead, such motions "serve the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence."[90] "It is well settled that motions for reconsideration should not be used . . . to re-urge matters that have already been advanced by a party."[91] When there exists no independent reason for reconsideration other than mere disagreement with a prior order, reconsideration is a waste of judicial time and resources and should not be granted.[92]

## IV. Analysis

### A.     Whether Reconsideration is Warranted for Consideration of Alleged "Newly Discovered Evidence"

Foster argues that reconsideration is warranted for consideration of "newly" discovered evidence; specifically, updated medical records demonstrate that she recently underwent a neurostimilator implant to help control her migraine headaches.[93] Defendant asserts that Plaintiff does not present newly discovered evidence, as Plaintiff's procedures occurred before the Court's November 21, 2017 judgment.[94] In the reply brief, Foster contends that the medical records were

---

[89] *Id.* (quoting *Templet v. Hydrochem, Inc.*, 367 F.3d 473, 479 (5th Cir. 2004)).

[90] *See Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989) (citation and internal quotation marks omitted).

[91] *Helena Labs. Corp. v. Alpha Sci. Corp.*, 483 F. Supp. 2d 538, 539 (E.D. Tex. 2007) (citing *Browning v. Navarro*, 894 F.2d 99, 100 (5th Cir. 1990)).

[92] *Livingston Downs Racing Ass'n v. Jefferson Downs Corp.*, 259 F. Supp. 2d 471, 481 (M.D. La. 2002). *See also Mata v. Schoch*, 337 B.R. 138, 145 (S.D. Tex. 2005) (refusing reconsideration where no new evidence was presented); *FDIC v. Cage*, 810 F. Supp. 745, 747 (S.D. Miss. 1993) (refusing reconsideration where the motion merely disagreed with the court and did not demonstrate clear error of law or manifest injustice).

[93] Rec. Doc. 39-1 at 2–3.

[94] Rec. Doc. 45 at 3.

not available when the cross motions for judgment on the pleadings were submitted to the Court on March 15, 2017.[95]

In *Ferraro v. Liberty Mutual Fire Insurance Co.*, the Fifth Circuit affirmed this Court's denial of a motion for reconsideration, where the plaintiffs argued that an email from the defendant constituted newly discovered evidence not presented at trial under Rule 59(e).[96] The Fifth Circuit stated that "[a] motion to reconsider based on an alleged discovery of new evidence should be granted only if (1) the facts discovered are of such a nature that they would probably change the outcome; (2) the facts alleged are actually newly discovered and could not have been discovered earlier by proper diligence; and (3) the facts are not merely cumulative or impeaching."[97] The Fifth Circuit held that the plaintiffs did not show "that the email is 'the type of new evidence that a truly diligent litigant would be powerless to unearth' prior to summary judgment."[98] The Fifth Circuit reasoned that the email's date stamp showed that the information was available to the plaintiffs during the course of litigation, and the plaintiffs did not offer any reason why they did not include the email in the opposition to defendant's motion for summary judgment.[99] Moreover, although the Fifth Circuit noted that the evidence may have supported the plaintiffs' theory of the case, the court ultimately determined that the plaintiffs had not "carried their burden to show that consideration of these new facts 'would probably change the outcome,' of their suit."[100]

---

[95] Rec. Doc. 52 at 1.

[96] *Ferraro v. Liberty Mut. Fire Ins. Co.*, 796 F.3d 529, 535 (5th Cir. 2015).

[97] *Id.* (quoting *Johnson v. Diversicare Afton Oaks, LLC*, 597 F.3d 673, 677 (5th Cir. 2010)).

[98] *Id.* (quoting *Diaz v. Methodist Hosp.*, 46 F.3d 492, 495 (5th Cir. 1995)).

[99] *Id.*

[100] *Id.* (quoting *Johnson*, 597 F.3d at 673).

Here, Foster underwent the trial procedure on July 13, 2017, and had the neurostimulator implanted on September 19, 2017.[101] Therefore, the medical procedures occurred well before entry of the Court's November 21, 2017 judgment. Foster argues that the procedures were not performed until after the cross motions for judgment on the pleadings were submitted to the Court. However, Foster has not provided any reason why she did not request leave of Court to file the evidence prior to the entry of judgment. Thus, Plaintiff has made no argument that this evidence was "newly discovered" pursuant to Rule 59(e) and has not "clearly established" that reconsideration is warranted.[102]

Moreover, Foster has not shown that consideration of this evidence "would probably change the outcome" of her suit.[103] "A long line of Fifth Circuit cases stand for the proposition that, when assessing factual questions, the district court is constrained to the evidence before the plan administrator."[104] Therefore, "[o]nce the administrative record has been determined, the district court may not stray from it but for certain limited exceptions, such as the admission of evidence related to how an administrator has interpreted terms of the plan in other instances, and evidence, including expert opinion, that assists the district court in understanding the medical terminology or practice related to a claim."[105]

---

[101] Rec. Doc. 39-2 at 4–8, 11–14.

[102] *See Schiller*, 342 F.3d at 567; *Castrillo*, 2010 WL 1424398, at *3.

[103] *Ferraro*, 796 F.3d at 535 (quoting *Johnson*, 597 F.3d at 673).

[104] *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 299 (5th Cir. 1999) (en banc), *overruled on other grounds by, Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008) (citing *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 215 (5th Cir. 1999); *Schadler v. Anthem Life Ins. Co.*, 147 F.3d 388, 394–95 (5th Cir. 1998); *Thibodeaux v. Cont'l Cas. Ins.*, 138 F.3d 593, 595 (5th Cir. 1998); *Barhan v. Ry–Ron Inc.*, 121 F.3d 198 (5th Cir. 1997); *Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Michigan*, 97 F.3d 822, 828–29 (5th Cir. 1996); *Sweatman v. Commercial Union Ins. Co.*, 39 F.3d 594, 597–98 (1994); *Duhon v. Texaco Inc.*, 15 F.3d 1302, 1306–07 (5th Cir. 1994); *S. Farm Bureau Life Ins. Co. v. Moore*, 993 F.2d 98, 101–02 (5th Cir. 1993); *Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 639 (5th Cir. 1992)).

[105] *Estate of Bratton v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 215 F.3d 516, 521 (5th Cir. 2000).

Foster argues that the Court can consider the medical records, which were not part of the record before the plan administrator, because the evidence would help the Court understand the medical terminology associated with migraine disorder as well as the practice related to the diagnosis and treatment of migraine disorder.[106] However, the Court finds this argument unavailing because Foster clearly attempts to present the medical records to address a factual question presented in this case, *i.e.*, the severity of Foster's headaches, and this evidence was not presented to the plan administrator.[107]

Finally, Foster asserts that the Court could remand this matter to the administrator for consideration of the medical records.[108] In *Offutt v. Prudential Insurance Co. of America*, the Fifth Circuit stated, "If new evidence is presented to the reviewing court on the merits of the claim for benefits, the court should, as a general rule, remand the matter to the plan administrator for further assessment . . . No remand is necessary, however, when it would be a useless formality."[109] In *Vega v. National Life Insurance Services, Inc.*, the Fifth Circuit recognized that "[i]n some special circumstances a remand to the administrator for further consideration may be justified."[110] Foster presents no argument that special circumstances justify a remand in this case,[111] considering that she underwent the medical procedures in July and September 2017 but failed to raise the issue

---

[106] Rec. Doc. 52 at 3.

[107] *Vega*, 188 F.3d at 299.

[108] Rec. Doc. 52 at 4.

[109] 735 F.2d 948, 950 (5th Cir. 1984) (citing *Wardle v. Cent. States, Se. and Sw. Areas Pension Fund*, 672 F.2d 820, 824 (7th Cir. 1980)).

[110] 188 F.3d 287, 302, n. 13 (5th Cir. 1999).

[111] *See* Rec. Doc. 52 at 4 ("Further, in order to protect against Principal's argument that it was not given an opportunity to address this evidence during the administrative process, the Court could remand this matter to Principal for consideration of its previous decision in light of this information.").

until after a final judgment was entered in November 2017. Therefore, even if the evidence is considered to be "newly discovered," Foster has not shown that consideration of this evidence "would probably change the outcome" of her suit.[112]

**B.    *Whether Reconsideration is Warranted due to "Manifest Errors of Law and Fact"***

In the supplemental memorandum filed after oral argument, Foster argues that the Court's judgment issued in favor of Principal on November 21, 2017, contains numerous "manifest errors of law and fact."[113] Specifically, Foster raises four issues that she claims warrant reconsideration: (1) the Court erred in finding that Foster failed to provide her job duties, that Plaintiff could not perform the material duties of her job, and that Principal considered her actual job duties; (2) the Court erred in finding no objective or clinical evidence of functionally impairing headaches; (3) the Court erred in finding that Foster suffers from a mental illness as opposed to a headache disorder; and (4) the Court erred in finding that Principal did not abuse its discretion in denying LWOP benefits, as Principal failed to provide evidence of alternative occupations that it believes Foster should be able to perform.[114] Principal argues that Foster's supplemental brief does not explain how the Court's decision includes manifest errors of law or fact and amounts to merely an expression of Foster's disagreement with the Court's opinion by rehashing previously raised arguments.[115]

The Court addressed Foster's claim that Principal abused its discretion in concluding that Foster was not disabled without addressing Foster's specific job requirements, noting that Foster

---

[112] *Ferraro*, 796 F.3d at 535 (quoting *Johnson*, 597 F.3d at 673).

[113] Rec. Doc. 54 at 1.

[114] *Id.*

[115] Rec. Doc. 60 at 1.

did not present any evidence linking her inability to work with any specific job requirements of a healthcare attorney.[116] Moreover, the Court determined that the opinions of Drs. Hoenig, Register, Harrop, Miller, and Chafetz provided "substantial evidence" to support Principal's determination that Foster was not "disabled" as defined by the Group Policy.[117]

In *Corry v. Liberty Life Assurance Co. of Boston*, the Fifth Circuit reversed the district court's judgment in favor of the plaintiff and upheld the defendant's denial of ERISA benefits.[118] There, the district court granted the plaintiff's motion for summary judgment, finding that the defendant abused its discretion in terminating benefits because it failed to consider the plaintiff's subjective complaints of pain and disability.[119] On appeal, the Fifth Circuit held that the administrator's decision to deny the plaintiff's claim was supported by substantial evidence.[120] The Fifth Circuit found that the administrator and the consulting physicians had considered and addressed the subjective complaints, and that it was solely the job of the administrator to weigh those complaints against other valid, conflicting medical opinions.[121] Therefore, the Fifth Circuit determined that "given the three qualified medical experts who found no objective medical evidence of disability, the administrator, under the established standard of review that restricts the courts, was not obliged to accept the opinion of [the plaintiff's] physicians."[122]

---

[116] Rec. Doc. 37 at 54 ("Although Foster contends that her physicians concluded that she is unable to work full-time as an attorney, Foster points to no evidence that addresses the specific job requirements of a healthcare attorney.").

[117] *Id.* at 55.

[118] *Corry v. Liberty Life Assurance Co. of Boston*, 499 F.3d 389, 401 (5th Cir. 2007).

[119] *Id.* at 397.

[120] *Id.* at 401.

[121] *Id.*

[122] *Id.*

Here, Foster essentially asks the Court to substitute its own judgment for that of the administrator. As the Court determined in its prior order, the opinions of Drs. Hoenig, Register, Harrop, Miller, and Chafetz provided "substantial evidence" to support Principal's determination that Foster was not "disabled" as defined by the Group Policy, and the administrator was not obliged to accept the opinion of Foster's physicians.[123] Therefore, Foster has not shown that reconsideration is necessary to correct a manifest error of law or fact.

Foster's second argument that the Court erred in finding no objective or clinical evidence of functionally impairing headaches is equally misplaced. Foster argues that the evidence in the record supports the claim that she had experienced frequent functionally impairing headaches. However, Foster still fails to point to objective evidence showing how those headaches impaired her functionality. It seems that Foster mistakenly conflates her subjective belief that the headaches were functionally impairing with objective evidence showing the precise manner in which her functionality was impaired. Therefore, the Court did not err in finding that substantial evidence supported Principal's determination. Accordingly, Foster has not shown that reconsideration is necessary to correct a manifest error of law or fact.

Third, Foster asserts that the Court erred in finding that Foster suffers from a mental illness as opposed to a headache disorder. This argument misconstrues the Court's opinion. The Court found that Principal did not abuse its discretion in concluding that Foster was not disabled under the Group Policy.[124] As such, even assuming that the mental health limitation, which provides that disabilities caused by a "Mental Health Condition" are subject to a limited pay period of 24

---

[123] Rec. Doc. 37 at 55.

[124] *Id.* at 58.

months, applied, Foster was not entitled to benefits because she was not disabled.[125] Therefore, Foster has not shown that reconsideration is necessary to correct a manifest error of law or fact.

Finally, Foster's argument that the Court erred in determining that Principal did not abuse its discretion in denying Foster's LWOP benefits was thoroughly addressed in the Court's prior order.[126] The Court determined that Principal did not abuse its discretion in concluding that Foster was not unable to perform the material duties of her own occupation as a healthcare attorney.[127] Therefore, it follows that Foster was not unable to perform the material duties of *any* occupation.[128] Furthermore, Foster admitted that she ceased working full-time on March 8, 2013.[129] The group life insurance policy defines a "member" as a person "who is a full-time employee" and "who regularly works at least 30 hours per week."[130] Foster's arguments on these issues amount to mere disagreement with the Court's conclusions, and she has not identified any manifest error of law or fact that warrant reconsideration.

## V. Conclusion

For the reasons stated above, Foster has not shown that reconsideration is warranted for consideration of newly submitted evidence. Furthermore, Foster has not identified any manifest error of law or fact that warrant reconsideration. Accordingly,

---

[125] *Id.*

[126] *Id.* at 58–63.

[127] *Id.* at 61.

[128] *Id.*

[129] *Id.* at 62.

[130] *Id.*

**IT IS HEREBY ORDERED** that the "Motion for Reconsideration/New Trial/and/or to Amend or Alter Judgment Under Rule 59"[131] is **DENIED.**

**NEW ORLEANS, LOUISIANA,** this _19th_ day of March, 2018.

_Nannette Jolivette Brown_
**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[131] Rec. Doc. 39.